IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELHASSEN NDIAYE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-6007 |
| | : | |
| J.L. JAMISON, et al | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                          **November 19, 2025**

Petitioner Elhassen Ndiaye brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS). He argues his mandatory detention by DHS pursuant to 8 U.S.C. § 1225(b)(2), a provision of the Immigration and Nationality Act (INA), is based on an incorrect interpretation of the statute. He also contends that mandatory detention without bond under § 1225 is a violation of his due process rights. Ndiaye has filed a motion for preliminary injunction seeking immediate release or, in the alternative, a bond hearing. Because § 1225(b)(2) does not apply to noncitizens like Ndiaye who have resided within the United States for years, his motion for preliminary injunction and petition will be granted.

## BACKGROUND

Elhassen Ndiaye is a Mauritanian noncitizen who came to the United States seeking asylum. Decl. Elhassen Ndiaye ¶¶ 1-3, Dkt. No. 5-3. Ndiaye identifies as a gay man and alleges he suffered severe persecution for his sexuality in Mauritania, where homosexuality is illegal and punishable by death. *Id.* ¶¶ 2-3. He claims he was thrown off a roof by his intolerant father and later arrested and tortured by law enforcement in his home country because of his sexuality. *Id.* ¶¶ 15-25, 36-53.

On January 10, 2023, Ndiaye arrived at the United States southern border and turned himself into the immigration authorities where he was detained and released on his own recognizance. *Id.* ¶ 55; I-220A, Dkt. No. 5-5. He then traveled to Philadelphia. Pet. Writ Habeas Corpus ¶ 27. On June 13, 2023, the Government issued a Notice to Appear for Ndiaye, commencing removal proceedings against him under 8 U.S.C. § 1229(a). Notice to Appear, Dkt. No. 1-3. On September 14, 2023, Ndiaye filed an asylum application pro se and later retained pro bono immigration counsel. Pet. Writ Habeas Corpus ¶ 25. His asylum hearing is currently scheduled for September 25, 2026. *Id.* ¶ 26. While his proceedings have been pending, Ndiaye received work authorization and had been working for DoorDash and in retail before his current detention. *Id.* ¶ 27.

On October 20, 2025, Ndiaye was detained by Immigration and Custom Enforcement (ICE) while attending a routine check-in. *Id.* ¶ 26. He was initially detained at the Federal Detention Center in Philadelphia and is now being held at the Moshannon Valley Processing Center.[1] Resp. Opp'n Pet. Mot. Prelim. Inj. 2, Dkt. No. 8. Ndiaye has complied with all the conditions of his release, attended every check in, and has no criminal convictions.[2] Pet. Writ Habeas Corpus ¶¶ 26, 28.

Ndiaye was detained by ICE pursuant to a new DHS policy. "On July 8, 2025, [DHS] . . . instituted a notice titled 'Interim Guidance Regarding Detention Authority for Applicants for

---

[1] While Ndiaye was transferred to the Western District of Pennsylvania, this Court still maintains jurisdiction over this case. *See Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445-46 (3d Cir. 2021) (finding "[w]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction").

[2] Ndiaye was arrested and charged in Philadelphia for Possession with Intent to Distribute, but the District Attorney's Office withdrew the case against him on June 10, 2024. Pet. Writ Habeas Corpus ¶ 26. The Government does not argue Ndiaye's detention is due to this incident.

Admission' to all ICE Employees." *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025). "Under [this] new interpretation and policy, individuals 'present in the United States without admission or parole' are now treated as 'applicants for admission' subject to mandatory detention under § 1225(b)(2), rather than discretionary detention under § 1226(a)." *Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *2 (D.N.J. Oct. 22, 2025). "[N]early all noncitizens who have never been admitted, regardless of whether they were stopped at the border or arrested years later inside the country, are now classified as an 'applicant for admission' that is 'seeking admission' into the country under § 1225(b)." *Id.* On September 5, 2025, the Board of Immigration Appeals (BIA) in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), agreed with DHS's interpretation and found the INA requires that all applicants for admission who have entered without admission or inspection, including those who have been residing in the United States for years without lawful status, are subject to mandatory detention without bond under § 1225(b). Many noncitizens have been detained without bond based on this new interpretation raising serious due process concerns, a bedrock principle of constitutional law.

**LEGAL STANDARDS**

Federal district courts can grant a § 2241 habeas petition when a petitioner's detention in deportation proceedings is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

A party "seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "[T]he

moving party must establish the first two factors and only if these gateway factors are established does the district court consider the remaining two factors." *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (internal quotation marks omitted). If the gateway factors are met, "[t]he court then determines . . . if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* (internal quotation marks omitted). The parties both agree that Ndiaye's success on his preliminary injunction motion depends entirely on the likelihood of success on the merits factor.

**DISCUSSION**

Ndiaye argues his detention is illegal because he has been improperly subjected to mandatory detention without bond under § 1225(b)(2) of the INA instead of § 1226's discretionary detention, and this detention violates due process. The Government contends provisions of the INA and exhaustion jurisprudence bar this Court from reviewing these claims. The Government also asserts the correct interpretation of § 1225(b)(2) allows mandatory detention of noncitizens like Ndiaye who are within the United States without lawful status. Because due process and proper statutory interpretation of the INA preclude Ndiaye from being mandatorily detained without bond under § 1225(b)(2), this Court will grant Ndiaye's writ of habeas corpus and motion for preliminary injunction. The Court will address each of the Government's threshold arguments then turn to the merits of Ndiaye's claims.

The Government argues 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) jurisdictionally bar the Court from hearing this case. None of these statutes are applicable here. Courts are guided by two presumptions when analyzing whether a statute bars judicial review of an agency's action. First, "the usual 'strong presumption [is] in favor of judicial review of administrative action.'" *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d

Cir. 2020) (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001)).  Second, "the general rule [states]

the narrower construction of a jurisdiction-stripping provision is favored." *Id.* (quoting *Alli v.*

*Decker*, 650 F.3d 1007, 1013 n.9 (3d Cir. 2011)).

The Government first argues 8 U.S.C. § 1252(g) bars review of Ndiaye's claims because

he is challenging the Government's commencement of removal proceedings.  8 U.S.C. § 1252(g)

states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien

arising from the decision or action by the Attorney General to [1] commence proceedings, [2]

adjudicate cases, or [3] execute removal orders against any alien under this chapter."  The Third

Circuit has cautioned this bar "does not sweep broadly.  It reaches only these three specific actions,

not everything that arises out of them." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020);

*see also Reno v. Am.-Arab Anti Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is

implausible that the mention of three discrete events along the road to deportation was a shorthand

way of referring to all claims arising from deportation proceedings.").

Ndiaye is explicitly not challenging the Government's commencement of his removal

proceedings.  He is instead challenging the legality of his *detention*, only seeking relief which

declares his detention illegal and secures his immediate release.  Pet. Writ Habeas Corpus p. 31-

32.  Nowhere in his briefing does he oppose the commencement of removal proceedings against

him.  Because Ndiaye is challenging his detention and not the Government's decision or discretion

to commence removal proceedings, § 1252(g) does not bar Ndiaye's claims.

The Government next argues 8 U.S.C. § 1252(b)(9) bars this Court's review.  Under §

1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and

application of constitutional and statutory provisions, arising from any action taken or proceeding

brought to remove an alien from the United States under this subchapter shall be available only in

judicial review of a final order under this section." The Third Circuit has held this provision "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C.*, 950 F.3d at 186. Ndiaye's requested relief is from unlawful and prolonged detention that cannot be litigated as part of a challenge to a final order of removal. By the time a final order of removal is entered, Ndiaye will either be deported or released with legal status so his challenge to his detention cannot be brought at the end of those proceedings.

The Government also points to 8 U.S.C. 1252(a)(2)(B)(ii), which states "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." But Ndiaye does not challenge a discretionary bond denial or decision, but rather the "extent of the [Government's] authority under the . . . detention statute[s]," which "is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The Government finally argues the Court should not hear Ndiaye's claims because he failed to exhaust them in his immigration proceedings. Exhaustion "is a matter of sound judicial discretion" when not required by statute. *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980). Petitioners seeking habeas relief under § 2241 are generally required to exhaust their claims through administrative procedures. *Callwood v. Enos*, 230 F.3d 627, 643 (3d Cir. 2000). But a petitioner does not need to "exhaust administrative remedies where the issue presented involves only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012). Because there are no applicable statutory exhaustion requirements and the issue in this case hinges entirely on the statutory construction of 8 U.S.C. §§ 1225 and 1226, this exception applies.

Additionally, "where exhaustion is not clearly mandated by statute, a futility exception exists." *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003). The exception is appropriate when the decisionmakers in the administrative process will almost certainly reject petitioner's requested relief. *See, e.g.*, *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981). Requiring Ndiaye to exhaust in the administrative process through his immigration judge and the BIA prior to litigating his habeas claims before this Court would be futile. Any immigration court proceedings are constrained by the BIA's decision in *Hurtado* and "would almost certainly result in the BIA persisting in its earlier rulings and applying those rulings to [Ndiaye] . . . ." *See, e.g.*, *Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL 2985150, at *13 (W.D. Pa. Oct. 23, 2025). Ndiaye is therefore not required to exhaust his claims.

Turning to the merits of the preliminary injunction motion, the disposition of this case hinges on whether § 1225(b)(2) or § 1226(a) applies to noncitizens like Ndiaye, who came to the United States without authorization but were released and have been living here for years while their removal proceedings are pending. The Court finds Ndiaye succeeds on the merits of his argument and is entitled to relief because § 1226(a) applies to him.

Section 1225(b)(2) states:

[I]n the case of *an alien who is an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, *the alien shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2) (emphasis added). The statute defines "an applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). The statute also defines "admitted" and "admission" as "the lawful entry of the alien into the

United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The phrase "an alien seeking admission" is not defined.

Under 8 U.S.C. § 1226(a), the Attorney General may detain a removable noncitizen and release them on bond. Bond is available if the noncitizen "demonstrate[s] . . . such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "[T]he immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond." *Id.* § 236.1(d)(1). Hence, § 1225(b)(2) subjects a noncitizen to mandatory detention without the possibility of bond while § 1226(a) only authorizes discretionary detention with the opportunity for a bond hearing.

As an initial matter, the Court need not defer to the BIA's decision in *Matter of Yajure Hurtado* that mandatory detention under § 1225(b)(2) applies to all applicants for admission, including those who have resided in the United States for years. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024). Notably, the overwhelming majority of district courts around the country that have considered this issue have rejected *Hurtado* and found the detention of noncitizen residing within the United State under § 1225 is unlawful.[3] As of November 19, 2025, at least three courts within the Eastern District of Pennsylvania have ruled against the Government's current interpretation of § 1225(b)(2). *See Cantu-Cortes v. O'Neil*, No. 25-cv-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); *Kashranov v. Jamison*, No. 2:25-cv-

---

[3] As of November 18, 2025, at least 288 district court decisions had addressed this same issue, and 282 of these decisions have rejected the Government's interpretation of the INA. *Demirel v. Fed. Det. Ctr.*, No. 25-cv-5488, slip op. at 1 (E.D. Pa. Nov. 18, 2025) (Diamond, J.) (Dkt. No. 11); *see also* Appendix, *Demirel*, No. 25-cv-5488 (Dkt. No. 11-1) (listing out all 288 cases). Only six of these decisions have adopted the Government's interpretation, and none of them are in this District. *Demirel*, slip op. at 1. This Court does not view these contrary decisions as persuasive.

5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Demirel v. Fed. Det. Ctr.*, No. 25-cv-5488 (E.D. Pa. Nov. 18, 2025) (Diamond, J.) (Dkt. No. 11). While these court decisions are not binding on this Court, they are persuasive.

In interpreting §§ 1225(b)(2) and 1226(a), this Court must "interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wis. Ctr. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). The Court first "start[s] . . . with the statutory language." *United States v. Brow*, 62 F.4th 114, 119 (3d Cir. 2023). A court must determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Further, statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* at 101 (cleaned up).

The language of § 1225(b)(2)(A) supports limiting this section to noncitizens who are just arriving or have recently arrived in the country. The subsection requires mandatory detention in the context of (1) "[i]nspection" by an "examining immigration officer" of (2) an "applicant for admission" as defined above, who is (3) "seeking admission." 8 U.S.C. § 1225(b)(2)(A). The phrase "seeking admission" connotes some affirmative, present-tense action. This active construction implies affirmative action by a noncitizen is needed and is inconsistent to apply this phrase to all noncitizens already residing in the United States.

The title and headings of 8 U.S.C. § 1225 also confirm this interpretation. Courts have "long considered that 'the title of a statute and the heading of a section are tools available for the resolution of a doubt' about the meaning of a statute.'" *Dubin v. United States*, 599 U.S. 110, 121

(2023) (citations and internal quotation marks omitted).  The title of 8 U.S.C. § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." "The titles, headings, and other provisions of § 1225 repeatedly refer to 'inspection,' and 'inadmissible arriving aliens,' and 'examin[ations],' which typically "occur at ports of entry, their functional equivalent, or near the border."  *Soto*, 2025 WL 2976572, at *6 (citing *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025)).  These terms demonstrate this section is meant to apply to noncitizens arriving in the country, not to those who already reside here.

In contrast, the title of 8 U.S.C. § 1226, "Apprehension and detention of aliens," indicates the section concerns noncitizens already present in the country.  None of its provisions mention arriving noncitizens or discuss the border or ports of entry.  As such, courts have interpreted § 1226 to "appl[y] to aliens already present in the United States" and to "create[] a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."  *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

The Government's interpretation of § 1225(b)(2) also violates the rule against surplusage, under which "every clause and word of a statute should have meaning," and "no clause, sentence, or word shall be superfluous, void, or insignificant."  *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks omitted).  The Government claims "an alien seeking admission" is just "an applicant for admission."  This construction effectively eliminates any meaning to the words "seeking admission" within the statute.  If Congress wished to make the term "an alien seeking admission" synonymous with "an alien applicant for admission," it could have easily done so.  Congress could have excised the term "seeking

admission" and stated: "In the case of an alien who is an applicant for admission, if the examining immigration officer determines *the alien* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  By simply using the words "the alien," Congress could have made it clear beyond all doubt the provision applies to "an applicant for admission."  Congress, however, did not make that choice when drafting this provision.  Instead, it intentionally added the phrase "an alien seeking admission."  Because "'Congress' choice of words is presumed to be deliberate' and deserving of judicial respect[,]" this Court must give meaning to the words "an alien seeking admission."  *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013)).

        The Government's interpretation would also make recently adopted provisions in 8 U.S.C. § 1226 completely superfluous.  Section 1226(c) carves out discrete categories of noncitizens who are subject to mandatory detention.  For example, a noncitizen who is deportable because of an aggravated felony must be detained.  *Id.* §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii).  In 2025, Congress passed the Laken Riley Act which amended § 1226(c) to add new categories of noncitizens subject to mandatory detention.  Laken Riley Act, Pub. L. No. 119-1 § 2, 139 Stat. 3, 3 (2025).  The amended subsection explicitly requires mandatory detention of all noncitizens who (1) are "inadmissible" for entering the country without being admitted or paroled and (2) have been charged with or convicted of certain crimes such as burglary.  8 U.S.C. § 1226(c)(1)(E).  Simply, if a noncitizen entered the country illegally and was subsequently convicted or charged with certain crimes, the noncitizen must be detained without a bond hearing while their removal proceedings are pending.  Under the Government's interpretation, § 1225 requires mandatory detention of all noncitizens who have illegally entered the country.  But if this is true, why would Congress need to add criminal charges or convictions as an additional requirement for mandatory detention under

§ 1226?  If noncitizens who enter the United States without authorization are already subject to mandatory detention under § 1225, then making them subject to mandatory detention under § 1226 is superfluous.

Take José Antonio Ibarra for example, the noncitizen who murdered Laken Riley, the namesake of the legislation.  171 Cong. Rec. S132 (daily ed. Jan. 14, 2025) (statement of Sen. Katie Britt); Laken Riley Act § 1 ("This Act may be cited as the 'Laken Riley Act'.").  Ibarra was illegally present within the country and released on bond during his deportation proceedings.  171 Cong. Rec. S132 (daily ed. Jan. 14, 2025) (statement of Sen. Katie Britt).  Congress undisputably passed the Laken Riley Act to mandatory detain individuals like Ibarra to protect the community at large.  *See id.*; Laken Riley Act, 139 Stat. at 3 ("To require the Secretary of Homeland Security to take into custody aliens who have been charged in the United States with theft, and for other purposes.").  However, under the Government's interpretation of § 1225, Ibarra would have already been subject to mandatory detention for simply illegally entering the United States.  The Government's interpretation of § 1225 would cause the Laken Riley Act's provisions to have no actual impact on immigration detention.  This cannot be.  In amending § 1226 to require mandatory detention of certain classes of inadmissible noncitizens, Congress intended these amendments to have "real and substantial effect."  *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258-259 (2004)).  This Court must apply § 1226 to noncitizens like Ndiaye to effectuate Congress' intent.  To hold otherwise would be the definition of improper surplusage.

Past agency practice also favors applying § 1226 to noncitizens like Ndiaye.  When statutes are ambiguous, courts can look to "the longstanding practice of the government" which "can inform [a court's] determination of what the law is."  *Loper Bright*, 603 U.S. at 386 (quoting *NLRB*

*v. Noel Canning*, 573 U.S. 513, 525 (2014)).  Before DHS's change of policy in July 2025, the Government's practice was to apply § 1226(a) to inadmissible non-citizens who were already residing in the country.  In fact, DHS has maintained this practice since § 1225(b)(2) first took effect in 1997.  Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208 §§ 302, 309, 110 Stat. 3009-546, 3009-579, 3009-625.  In 1997, the Executive Office for Immigration Review stated in proposed regulations, "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination."  *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  Since then, the Government's immigration enforcement practices have been to detain noncitizens who have been residing in the United States under § 1226, entitling them to a bond hearing.  When Ndiaye was detained and released on his own recognizance in 2023, his I-220A form explicitly stated he was released pursuant to § 1226.  Dkt. No. 5-5.  So, the longstanding practice of using § 1226 to detain noncitizen who are present within the United States favors Ndiaye's interpretation of the INA.

Congress' passage of the Laken Riley Act also serves as an endorsement of this longstanding past interpretation of § 1225(b)(2).  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'"  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (citing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274-75 (1974) (footnotes omitted)).  Additionally, "[w]hen Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' the Court generally presumes the new provision works in harmony with what came before."  *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 713 (2025)

13

(quoting *Haig v. Agee*, 453 U.S. 280, 297-98 (1981)).  When passing the Laken Riley Act in January 2025, Congress revisited the detention provisions of the INA, including both § 1225 and § 1226.  Laken Riley Act §§ 2, 3 (amending § 1225(b) to include a right of action against the DHS Secretary for violation of the statute's detention and removal requirements).  Instead of rejecting the Government's longstanding practice, it added a narrow category of noncitizens to be subjected to mandatory detention under § 1226.  Congress could have explicitly stated that all inadmissible noncitizens are subject to mandatory detention, but it did not.  Because Congress revisited the INA detention provisions and did not change the specific language in § 1225, the Court finds Congress intended to continue application of the longstanding interpretation that § 1225 covers noncitizens who are arriving or just arrived in the United States and not noncitizens like Ndiaye who have residing within the United States for years.

Finally, the canon of constitutional avoidance counsels against the Government's interpretation.  The canon holds "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail.  *Clark v. Martinez*, 543 U.S. 371, 380-81 (2013).  This canon applies "whether or not [the] constitutional problems pertain to the particular litigant before the Court" and rests "on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."  *Id.* at 380-81 (emphasis omitted).

Mandatory detention of long-present noncitizens without a bond hearing under § 1225 raises serious constitutional due process problems.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  Courts have been skeptical of

14

lengthy civil detention without particularized rationale or determination. *Id.* at 690. The Third Circuit has recognized the due process rights of immigration detainees who are subject to lengthy mandatory detention under § 1226(c) without a bond hearing. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020). It has found detention that lasts between six months and one year to be unreasonable. *Id.* at 211. Mandatory detention under § 1225 does not have a bond hearing requirement at any point of time. If the Government is permitted to detain Ndiaye under § 1225, he will almost certainly be detained for over a year without bond since his asylum hearing is scheduled for September 2026. Many other similar noncitizens will also be subjected to potentially unconstitutionally prolonged detention if the Court adopts this interpretation.[4]

The Government argues that standard due process does not apply to mandatory detention under the INA, citing to *Demore v. Kim*, 538 U.S. 510 (2003). But *Demore* dealt with ensuring deportable *criminal* noncitizens attended their removal proceedings and the Court upheld the detention provisions based on the brief period of detention which averaged six months. *Id.* at 527-29. Neither of those factors are applicable here.

The Government also argues the Supreme Court found § 1225 mandatory detention to be constitutional in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). The Government is wrong. The Supreme Court in *Jennings* only addressed whether an implicit limit on the length of mandatory

---

[4] These due process concerns intensify with another absurd impact of the Government's interpretation on immigration enforcement. Current BIA precedent holds a grant of asylum does not constitute an admission as defined by the INA. *Matter of V-X-*, 26 I. & N. Dec. 147, 150-52 (BIA 2013). So as petitioner's counsel noted at oral argument, even if Ndiaye succeeds on his asylum claim and becomes lawfully present within the United States, under the Government's interpretation, he could nevertheless be mandatorily detained without bond in the future if removal proceedings are reinitiated. The Government's interpretation of § 1225 could also subject many other successful asylees who are lawfully in the United States to mandatory detention without bond, raising more due process concerns.

detention existed in the language of the statute based on the canon of constitutional avoidance. *Id.* at 287. It explicitly declined to comment on whether § 1225 mandatory detention without bond is constitutional. *Id.* at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. Consistent with our role as a court of review, not of first view, we do not reach those arguments." (cleaned up)). Additionally, the question of whether § 1225 applied to noncitizens similarly situated to Ndiaye was not addressed because neither the Government nor the parties raised this interpretation. Thus, the canon of constitutional avoidance favors the statutory interpretation which applies § 1226 detention to noncitizens like Ndiaye because it avoids the potential constitutional due process concerns that the Government's interpretation would raise.

After reviewing the text and structure of the INA, longstanding agency practice, Congress' actions, and the canon of constitutional avoidance, the Court finds § 1226 applies to noncitizens like Ndiaye who have been residing in the country, while § 1225 is reserved for newly arriving noncitizens. Ndiaye therefore succeeds on the merits of his motion. On the irreparable harm, balance of the equities, and public interest factors, the parties agree these factors favor granting relief if Ndiaye prevails on the merits of his motion. *See also Del Cid*, 2025 WL 2985150, at *18 (finding irreparable harm is proven when a petitioner is detained unlawfully under § 1225(b)(2)); *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("As a practical matter, if a [petitioner] demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the [petitioner]."). Because Ndiaye prevails on all four factors, he is entitled to injunctive relief.

"[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Ndiaye has been unlawfully detained under § 1225(b)(2) and his continued mandatory detention violates due process. Because a bond hearing is unnecessary, this Court will order his immediate release.[5]

**CONCLUSION**

Accordingly, the Court will grant Petitioner Elhassen Ndiaye's Motion for Preliminary Injunction and Petition for Writ of Habeas Corpus in full.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[5] The Government has offered no rationale to refuse bond to Ndiaye and its counsel has conceded at oral argument that it has none. In a "bond hearing, the Government bears the burden of persuasion by clear and convincing evidence" to support a "finding that continued detention is needed to prevent [the noncitizen] from fleeing or harming the community." *German Santos*, 965 F.3d at 214 (citation omitted). It is clear Ndiaye is not likely to flee or harm the community. A bond hearing would certainly result in Ndiaye's release and only serve to delay relief.