IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELHASSEN NDIAYE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-6007 |
| | : | |
| J.L. JAMISON, et al | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                           **February 10, 2026**

On November 19, 2025, this Court granted Petitioner Elhassen Ndiaye's habeas petition, finding his mandatory detention under 8 U.S.C. § 1225(b)(2) was illegal and that he could only be detained under § 1226 with opportunity for a bond hearing. In so holding, this Court summarily concluded the jurisdictional provisions of the Immigration and Nationality Act (INA), including 8 U.S.C. § 1252(b)(9), did not preclude review under clear Third Circuit precedent. On January 15, 2026, the Third Circuit decided *Khalil v. President, United States of America*, which clarified the bounds of § 1252(b)(9). The next day, the Government filed a notice of appeal in this case. In light of the § 1252(b)(9) standard established in *Khalil*, the Court issues this supplemental memorandum to further explain its conclusion pursuant to Third Circuit Local Appellate Rule 3.1. After reviewing the *Khalil* decision and relevant Supreme Court precedent, the Court continues to adhere to its conclusion that § 1252(b)(9) does not strip it of jurisdiction over Ndiaye's claims.

**DISCUSSION**[1]

Under § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall

---

[1] The full factual and procedural history of this matter are set forth in this Court's November 19, 2025 memorandum and will not be repeated here. *See Ndiaye v. Jamison*, No. CV 25-6007, 2025 WL 3229307, at *1-2 (E.D. Pa. Nov. 19, 2025).

be available only in judicial review of a final order under this section." This provision is referred to as the "zipper clause" because it "is designed to channel claims together" through a single petition for review (PFR) of a final order of removal by a Court of Appeals.[2] *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020).

The Third Circuit in *E.O.H.C.* found the question a court should ask to determine whether a case "aris[es] from" removal proceedings is this: "If not now, when?" *Id.* If the answer to this question would be never, "then § 1252(b)(9) poses no jurisdictional bar. In other words, it does not strip jurisdiction when [noncitizens] seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.*

This Court previously found § 1252(b)(9) did not strip it of jurisdiction over Ndiaye's claims because he sought "relief that courts cannot meaningfully provide alongside review of a final order of removal." *Ndiaye v. Jamison*, No. CV 25-6007, 2025 WL 3229307, at *3 (E.D. Pa. Nov. 19, 2025) (citing *E.O.H.C.*, 950 F.3d at 186).[3] The Court reasoned that "Ndiaye's requested relief is from unlawful and prolonged detention that cannot be litigated as part of a challenge to a final order of removal" because by "the time a final order of removal is entered, Ndiaye will either be deported or released with legal status so his challenge to his detention cannot be brought at the end of those proceedings." *Id.*

---

[2] A noncitizen "litigate[s] his removal-related claims before an immigration judge. Then, after an order of removal, he may appeal to the Board of Immigration Appeals. Only after that may he file a [PFR] with a court of appeals. Usually, district courts are not part of this process." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020). The PFR court "shall decide the petition only on the administrative record on which the order of removal is based" but can consider constitutional claims. 8 U.S.C. § 1252(b)(4)(A); *Khalil v. President, United States of America*, 164 F.4th 259, 280 (3d Cir. 2026) (per curiam).

[3] The Court also found § 1252(g), § 1252(a)(2)(B)(ii), and exhaustion did not preclude it from addressing the merits of Ndiaye's claims. *Id.* at *3-4.

Since the Court's decision in this matter, the Third Circuit decided *Khalil v. President, United States of America*, 164 F.4th 259, 273-74 (3d Cir. 2026) (per curiam), which clarified the standard for when § 1252(b)(9) applies.[4] In *Khalil*, a divided panel of the Third Circuit found that *E.O.H.C.* left an open question as to whether the "if not now, when" inquiry is about legal questions or legal remedies. *Id.* at 274-75. Answering this question, the Third Circuit held that "now-or-never claim[s] must raise legal or factual *questions* that a court of appeals will not later be able to review meaningfully on a PFR." *Id.* at 274-75 (emphasis added). But the *Khalil* court did not address whether a challenge to detention without opportunity for a bond hearing (like Ndiaye's) is a now-or-never claim. This Court concludes these challenges are now-or-never claims under the rationale of *Khalil*.

In *Khalil*, Mahmoud Khalil, a lawful permanent resident who is an outspoken advocate for Palestinian human rights, was detained by ICE and subject to removal proceedings. *Id.* at 266. The government justified initiating removal on the grounds that Khalil's "presence or activities in the United States . . . would have potentially serious adverse foreign policy consequences" and he "had 'procured' his status as a lawful permanent resident 'by fraud or by willfully misrepresenting a material fact.'" *Id.* at 266-67 (internal citations omitted). After being detained, Khalil filed a habeas petition challenging his detention and removal because "the government was retaliating against [his] protected speech, preventing his future political speech and activism, . . . violating due process," adopting "an unlawful policy of targeting immigrants for pro-Palestinian speech," relying on "foreign-policy provisions of the INA [that] were unconstitutionally vague as applied,"

---

[4] The Third Circuit panel also unanimously found the district court retained jurisdiction over Khalil's habeas petition despite his post-filing transfer. *Id.* at 270-71. This holding confirms this Court's habeas jurisdiction over Ndiaye, despite his post-filing transfer to Moshannon Valley Processing Center, located outside of the district. *Id.*; *Ndiaye*, 2025 WL 3229307, at *1 n.1.

and unconstitutionally punishing him with detention. *Id.* A district court found it had jurisdiction over these claims and granted Khalil relief, enjoining the government from detaining and removing him, and ordering his immediate release. *Id.* The Third Circuit vacated the district court's order because it found § 1252(b)(9) barred Khalil's claims until a PFR because they raised "questions [which] are not 'wholly collateral' to the removal process; they are 'inextricably linked' to it." *Id.* at 274 (internal citation omitted).

The Third Circuit explained claims are "inextricably linked" to a noncitizen's removal process if they "raise legal questions challenging the government's very basis for trying to remove (and thus detaining)" the noncitizen. *Id.* (emphasis omitted). The court found Khalil's claims challenging the government's alleged "policy of punishing [noncitizens'] pro-Palestinian speech" as well as its "foreign-policy and fraud charges" raised legal questions challenging the government's removal and detention rationale. *Id.* at 276. "[A]ddressing any of those claims would require deciding whether removing [a noncitizen] would be unlawful—the very issue decided through the PFR process." *Id.* The court concluded these types of claims can be litigated on a PFR because they implicate "matters on which the validity of the final order is contingent." *Id.* (quoting *Massieu v. Reno*, 91 F.3d 416, 422 (3d Cir. 1996) (Alito, J.)) (original alteration omitted).

Under this framework, the Third Circuit also determined detention claims that are identical to a noncitizen's removal-based claims are barred under § 1252(b)(9). *Id.* at 276-77. In Khalil's case, this included his claim that his detention was unconstitutional and punitive because his "[a]rguments . . . necessarily challenge[d] the government's decision to commence removal." *Id.* at 276-77 (internal citation omitted). So, his detention-specific claims "just repackage[d] his challenges to his removal." *Id.* at 277. As a result, his "detention claim [rose] or [fell] with the

4

other[]" removal-based claims. *Id.* (internal quotations removed). The Third Circuit also applied these principles to find the district court lacked jurisdiction under § 1252(b)(9) to hear these challenges to the "mere fact of detention." *Id.* at 279. These claims must wait for a PFR court. *Id.* at 281.

In contrast to "inextricably linked" claims, the Third Circuit held claims which raise questions "wholly collateral" to the removal process do not run afoul of § 1252(b)(9). *Id.* at 274. Wholly collateral claims instead constitute now-or-never claims because the legal questions they raise cannot be reviewed later on PFR. *See id.* The Third Circuit indicated detention-specific claims challenging the length and conditions of confinement are examples of these types of claims. *Id.* at 277.[5]

The court further distinguished between removal-based claims, like Khalil's, which challenged the basis of his removal, and detention-specific claims which are wholly collateral by highlighting various out-of-circuit cases. The court pointed to *Miranda v. Garland* as being factually dissimilar from Khalil's circumstances, describing it as a case where "the petitioners were not 'challenging the decision to detain them' but only the bond procedures used." *Id.* at 278-79 (quoting *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022)). In *Miranda*, the Fourth Circuit "concluded that § 1252(b)(9) would not preclude review" of the petitioners' detention-specific claims. 34 F.4th at 353 n.6. The Third Circuit also cited to a concurrence in *Öztürk v. Hyde*. *Khalil*, 164 F.4th at 274 (quoting *Öztürk v. Hyde*, 155 F.4th 187, 189 (2d Cir. 2025) (Menshi, J., concurring in the denial of rehearing en banc)); *see also id.* at 276-77 (quoting *Öztürk*, 155 F.4th

---

[5] Notably, the decision cited length- and conditions-of-confinement claims as *examples* of detention-specific claims which are wholly collateral but did not indicate these are the *only* claims which are not barred by § 1252(b)(9). *Khalil*, 164 F.4th at 277 ("To be sure, some claims can be detention-specific, like the length- and conditions-of-confinement claims discussed in *E.O.H.C.*").

at 192-93). This concurring opinion also distinguished claims "challenging the conditions or scope of detention of aliens in removal proceedings" which are not barred by § 1252(b)(9), from claims "that [argue] detention[] [is] unlawful because the government has no lawful grounds for removing them in the first place." *Öztürk*, 155 F.4th at 191-92.

Detention-specific claims, therefore, are not barred by § 1252(b)(9) when they are not inextricably linked to the removal process—i.e., when they do not raise legal questions challenging the government's basis for removal or implicate matters on which the validity of a final removal order is contingent. These wholly collateral claims raise legal questions which must be heard *now* by a district court and cannot be reviewed later by a PFR court.

Ndiaye's claims are wholly collateral to his removal proceedings. The facts and substance behind Ndiaye's claims are distinguishable from the claims at issue in *Khalil*. In explaining how "[l]etting petitioners raise now-or-never injuries through habeas based on claims that can be litigated later would subvert [§ 1252(b)(9)'s] channeling scheme," the Third Circuit provided the following example:

> [i]f, for instance, a detained alien claimed that the INA section that made him removable was unconstitutionally vague, he could bring that claim right away on habeas (because illegal detention cannot be remedied later). With a final judgment in hand, the winning side could use issue preclusion or law of the case in the later PFR, leaving that court nothing to decide. *See Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (holding that habeas finding that alien was not removable precluded relitigating that issue in removal proceedings). That prospect would encourage the very "piecemeal litigation" that § 1252(b)(9) is designed to prevent. *E.O.H.C.*, 950 F.3d at 184.

*Id.* The facts in this example mirror those surrounding Khalil's case and the court used this rationale to find the claims brought by both the detained noncitizen in the example and Khalil to be barred by § 1252(b)(9). *Id.* at 267, 275. But Ndiaye and other noncitizens challenging their detention under § 1225(b)(2) are in a completely different posture from Khalil and the detainee in this example.

6

Ndiaye challenged his detention without a bond hearing and successfully received a final judgment from this Court on this issue. Dkt. No. 15. However, he cannot use this final judgment to prevail on his challenge to removal through "issue preclusion or law of the case in the later PFR." *Khalil*, 164 F.4th at 275. This Court's judgment stated Ndiaye is not subject to mandatory detention under § 1225 but may be detained only under § 1226 with opportunity for a bond hearing. Dkt. No. 15 at 1. The Court did not find that the Government has *no* authority or discretion to detain Ndiaye. In fact, the Court explicitly permitted the Government to "pursue re-detention of Ndiaye" under § 1226, subject to the requirement that it must provide Ndiaye "with a bond hearing, at which a neutral immigration judge shall determine whether detention is warranted pending the resolution of his removal proceedings" in accordance with the INA. *Id.* So, the judgment did not challenge the Government's choice to detain Ndiaye or his mere fact of detention. It required only that the Government use certain legal procedures if it pursues Ndiaye's detention.

The judgment also has no substantive impact on Ndiaye's removal proceedings. Ndiaye did not seek any relief from removal from this Court. Ndiaye Reply Br. 1, Dkt. No. 9 ("Ndiaye *is not* challenging the initiation of removal proceedings—indeed, his entire purpose in coming to the United States was [to] seek asylum, or to be placed into removal proceedings so that he could present his meritorious claim to an immigration judge."). Accordingly, the Court did not address the basis on which the Government seeks Ndiaye's removal or the underlying merits of his asylum claim. After the Court issued its order, the Government continues to seek Ndiaye's removal through the administrative process and Ndiaye continues to seek asylum. If Ndiaye fails in his asylum claim and a final removal order is entered against him, he can still seek an appeal with a PFR court. This Court's judgment does not "leav[e] that court [with] nothing to decide." *Khalil*,

164 F.4th at 275. Thus, Ndiaye's detention-based claim does not "rise[] and fall[]" with his removal-based claims. *Id.* at 277.

Nor does it create improper piecemeal litigation. The Court having jurisdiction over these types of cases fits within the current "zipper" framework created by § 1252(b)(9). The statute funnels legal and factual questions necessarily challenging *removal*, including detention claims that oppose the basis for removal into the immigration administrative process and to a PFR court. Meanwhile, detention challenges that only oppose the government's bond procedures, the statutory scope of mandatory detention, or the length of confinement can be litigated by non-PFR courts because such claims cannot be brought through the PFR process. For example, district courts routinely entertain claims related to the scope of mandatory detention under § 1226(c)[6] without running into the § 1252(b)(9) bar. *See, e.g.*, *Nieto-Ramirez v. Holder*, 583 F. App'x 330, 331-32 (5th Cir. 2014) ("[Petitioner]'s . . . claimed grounds for relief go only to her detention under 8 U.S.C. § 1226(c), not to the underlying removal proceeding or its collateral consequences."); *Vasquez Cruz v. Barr*, No. 19-CV-5251, 2019 WL 6327576, at *2-4 (N.D. Cal. Nov. 26, 2019); *Reinis G. v. Rodriguez*, No. CV 18-12529, 2019 WL 1789515, at *3 (D.N.J. Apr. 22, 2019). Similarly, under *Khalil*, challenges to a noncitizen's mandatory detention under § 1225(b)(2) without opportunity for a bond hearing do not fall under the jurisdictional bar of § 1252(b)(9).

Supreme Court precedent also mandates this result. In *Jennings v. Rodriguez*, a majority of Justices found § 1252(b)(9) did not include every claim arising from any action to remove a noncitizen from the country. 583 U.S. 281, 292-294 (2018) (plurality opinion); *id.* at 355 (Breyer, J., dissenting). This majority rejected the position that the INA "prohibit[s] courts from reviewing

---

[6] "Section 1226(c) carves out discrete categories of noncitizens who are subject to mandatory detention. For example, a noncitizen who is deportable because of an aggravated felony must be detained." *Ndiaye*, 2025 WL 3229307, at *6 (internal citations omitted).

[noncitizens'] claims related to their removal, except in a petition for review from a final removal order . . . ." *Id.* at 314 (Thomas, J., concurring in part and concurring in judgment).

A year later in *Nielsen v. Preap*, a majority of the Justices found § 1252(b)(9) did not serve as a jurisdictional bar to a petitioner's detention-specific claims. 586 U.S. 392, 394 (2019) (plurality opinion) (Alito, Roberts, Kavanaugh, JJ.); *id.* at 427 (Breyer, Ginsburg, Sotomayor, Kagan, JJ., dissenting). The petitioners in *Preap* were noncitizens "who were detained under § 1226(c)(2)'s mandatory-detention requirement—and thus denied a bond hearing—pending a decision on their removal." *Id.* at 399. These detainees alleged they were "exempt from mandatory detention under § 1226(c) and [we]re entitled to a bond hearing to determine if they should be released pending a decision on their status." *Id.* The heart of the dispute in *Preap* was over the scope of § 1226(c)'s mandatory detention provisions: whether the noncitizen detainees were subject to mandatory detention without bond.

The three-Justice plurality, held "§ 1252(b)(9) d[id] not present a jurisdictional bar" to the detainees' claim because they "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [*as opposed to the decision to deny them bond hearings*]; and they are not even challenging any part of the process by which their removability will be determined." *Preap*, 586 U.S. at 402 (quoting *Jennings*, 583 U.S. at 294-95) (second alteration in the original) (emphasis added).[7] Furthermore, by addressing the merits of the claim, the four dissenting Justices also found § 1252(b)(9) does not present a jurisdictional bar. *See id.* at 427 (Breyer, J., dissenting); *cf. Miranda*, 34 F.4th at 353 ("But the dissenting justices [in *Preap*] did not object to Justice Alito's jurisdictional analysis. Since any

---

[7] The plurality also found § 1226(e), § 1252(f)(1), and mootness did not prevent the Court from reviewing the merits of the case. *Id.* at 401-04.

one of the potential jurisdictional obstacles addressed there would have precluded judicial review, the dissenting justices must have agreed that § 1226(e) was not a bar."). Only two Justices, "believe[d] that no court has jurisdiction to decide questions concerning the detention of aliens before final orders of removal have been entered." *Id.* at 422 (Thomas & Gorsuch, JJ. concurring in part and concurring in the judgment) (internal citation omitted). In total, seven of the nine Justices found § 1252(b)(9) did not strip district courts of jurisdiction over challenges to whether a noncitizen is subject to mandatory detention under § 1226(c).

Under the *Marks* rule, "[w]hen no opinion of the [Supreme] Court commands a majority of the Justices, [courts] must look for the 'narrowest of the opinions and the common denominator of the Court's resulting decision.'" *Khalil*, 164 F.4th at 278 (quoting *Lebanon Farms Disposal, Inc. v. Cnty. of Lebanon*, 538 F.3d 241, 248 (3d Cir. 2008)). "To that end, [the Third Circuit has] looked to the votes of dissenting Justices if they, combined with votes from plurality or concurring opinions, establish a majority view on the relevant issue." *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011); *see also Khalil*, 164 F.4th at 278; *id.* at 283 (Freeman, J., dissenting).

As described above, seven Justices in *Preap* "establish a majority view on the relevant issue"—a view that the jurisdiction-stripping provision of § 1252(b)(9) does not apply to challenges regarding the scope of the INA's mandatory detention provisions. *Donovan*, 661 F.3d at 182. "The plurality's reading of § 1252(b)(9) binds us." *Khalil*, 164 F.4th at 278 (describing how the Third Circuit must adhere to the *Jennings* plurality's narrow holding on the scope of § 1252(b)(9) based on the views of three plurality Justices and three dissenting Justices).

Ndiaye and other noncitizens challenging their detention under § 1225(b)(2) are in the same jurisdictional posture as the petitioners in *Preap*. The substance of Ndiaye's argument is that the Government's "unlawful application of § 1225(b)(2) to [him] violates the INA" and he "is detained

10

under § 1226(a) and is eligible for release on bond." Ndiaye Pet. ¶ 59, Dkt. No. 1.  The *Preap* petitioners raised a similar argument, "contend[ing] that they [we]re not properly subject to § 1226(c)'s mandatory-detention scheme, but instead are entitled to the bond hearings available to those held under the general arrest and release authority provided in § 1226(a)." 586 U.S. at 404. While the petitioners in these cases challenged different sections of the INA, the substance of their claims is the same: they are illegally subject to mandatory detention without bond under the statute. They are "not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]; and they are not even challenging any part of the process by which their removability will be determined. . . ." *Id.* at 402 (alteration in original) (quoting *Jennings*, 583 U.S. at 294-95). The rationale behind *Preap* applies with equal force to noncitizens like Ndiaye bringing challenges to their § 1225(b)(2) detention.  So § 1252(b)(9) does not apply to these types of claims.

Moreover, as of February 9, 2026, at least four other judges within the Eastern District of Pennsylvania have explicitly found *Khalil* does not impact challenges to § 1225(b)(2) detention.[8] Other courts around the country have also reached the same conclusion.[9]  The Court finds these decisions persuasive.  The Court, therefore, under the clarified standard of § 1252(b)(9) set by *Khalil* and Supreme Court precedent, finds the provision does not strip this Court of jurisdiction over the claims in this case.

---

[8]   *See Kourouma v. Jamison*, No. CV 26-182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) (Marston, J.); *Montes Restrepo v. Jamison*, No. 25-CV-6518, 2026 WL 141803, at *5 (E.D. Pa. Jan. 20, 2026) (Leeson, J.); *Laguna v. Rose*, No. 26-312, 2026 WL 205960, at *2 n.4 (E.D. Pa. Jan. 27, 2026) (Brody, J.); *Giyosov v. Jamison*, No. CV 26-298, 2026 WL 209839, at *4 (E.D. Pa. Jan. 27, 2026) (Rufe, J.).

[9]   *See, e.g.*, *Romero v. Lowe*, No. 26-CV-9, 2026 WL 296215, at *3 (M.D. Pa. Feb. 4, 2026); *Coronel-Hernandez v. Woosley*, No. 26-CV-20, 2026 WL 227011, at *3 (W.D. Ky. Jan. 28, 2026).

"At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "When English monarchs jailed their subjects summarily and indefinitely, common-law courts employed the writ as a way to compel the crown to explain its actions—and, if necessary, ensure adequate process . . . before allowing any further detention. The Great Writ was, in this way, no less than the instrument by which due process could be insisted upon." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, --F.4th--, No. 24-2990, 2026 WL 263483, at *13 (3d Cir. Feb. 2, 2026) (internal quotations omitted) (quoting *Brown v. Davenport*, 596 U.S. 118, 128 (2022)). "It remains so today." *Id.*

District courts have the jurisdiction and responsibility to consider noncitizen habeas petitions challenging illegal executive detention if they do not interfere with the removal process. The petition brought by Elhassen Ndiaye is wholly collateral to his removal proceedings. This Court, therefore, has jurisdiction over Ndiaye's claims and can grant him relief.

**CONCLUSION**

Accordingly, the Court finds it has jurisdiction over Petitioner Elhassen Ndiaye's Motion for Preliminary Injunction and Petition for Writ of Habeas Corpus and he is entitled to relief. [10]

---

[10] Every day, district courts around the country continue to rule against the Government's position that § 1225(b)(2) allows mandatory detention without bond of noncitizens like Ndiaye. Over "308 judges[, appointed by every president since Ronald Regan,] have ruled against the [Government]'s mass detention policy—ordering release or bond hearings in more than 1,600 cases." Kyle Cheney, *Hundreds of Judges Reject Trump's Mandatory Detention Policy, With No End in Sight*, Politico (Jan. 5, 2026, 5:55 AM), https://www.politico.com/news/2026/01/05/trump-administration-immigrants-mandatory-detention-00709494. In the Eastern District of Pennsylvania, virtually every single active district judge has also ruled against the Government. *See, e.g.*, *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1-2 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *4-7 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-cv-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (Diamond, J.); *Ndiaye*, 2025 WL 3229307, at *8 (Sánchez, J.); *Patel v. McShane*, No. CV 25-5975, 2025 WL 3241212, at *3 (E.D. Pa. Nov. 20, 2025) (Brody, J.);

*Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. CV 25-6312, 2025 WL 3294726, at*4-8 (E.D. Pa. Nov. 25, 2025) (Rufe, J.); *Espinal Rosa v. O'Neill*, No. 25-cv-6376 (E.D. Pa. Nov. 25, 2025) (Weilheimer, J.); *Morocho v. Jamison*, No. 25-CV-5930, 2025 WL 3296300, at *2-3 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.); *Diallo v. O'Neill*, No. CV 25-6358, 2025 WL 3298003, at *2-6 (E.D. Pa. Nov. 26, 2025) (Savage, J.); *M-L-Z-v. Noem*, No. 25-5479, 2025 WL 3470046, at *1-3 (E.D. Pa. Dec. 2, 2025) (Baylson, J.); *Soumare v. Jamison*, No. CV 25-6490, 2025 WL 3461542, at *3 (E.D. Pa. Dec. 2, 2025) (Henry, J.); *Nogueira-Mendes v. McShane*, No. CV 25-5810, 2025 WL 3473364, at *4 (E.D. Pa. Dec. 3, 2025) (Slomsky, J.); *Rodrigues Pereira v. O'Neill,* No. CV 25-6543, 2025 WL 3516665, at *6-8 (E.D. Pa. Dec. 8, 2025) (Marston, J.); *Anirudh v. McShane*, No. CV 25-6458, 2025 WL 3527528, at *4-6 (E.D. Pa. Dec. 9, 2025) (Bartle, J.); *Picon v. O'neill*, No. CV 25-6731, 2025 WL 3634212, at *4-5 (E.D. Pa. Dec. 15, 2025) (Perez, J.); *Hurtado v. Jamison*, No. CV 25-6717, 2025 WL 3678432, at *5-6 (E.D. Pa. Dec. 18, 2025) (Padova, J.); *Toure v. Bondi*, No. 25-cv-710 (E.D. Pa. Dec. 19, 2025) (McHugh, J.); *Rios Porras v. O'Neill*, No. CV 25-6801, 2025 WL 3708900, at *3 (E.D. Pa. Dec. 22, 2025) (Beetlestone, C.J.); *Dong v. Rose*, No. 25-cv-7182 (E.D. Pa. Dec. 23, 2025) (Kearney, J.); *Kumar v. McShane*, No. CV 25-6238, 2025 WL 3722005, at *7 (E.D. Pa. Dec. 23, 2025) (Quiñones Alejandro, J.); *Mardet v. Jamison*, No. CV 25-7169, 2025 WL 3772152, at *1 (E.D. Pa. Dec. 31, 2025) (Hodge, J.); *Camara v. Jamison*, No. 25-cv-7326 (E.D. Pa. Dec. 31, 2025) (Schmehl, J.); *Diop v. Jamison*, No. 25-cv-6946 (E.D. Pa. Jan. 5, 2026) (Murphy, J.); *Manrique-Luque v. Jamison*, No. 25-cv-7332 (E.D. Pa. Jan. 7, 2026) (Younge, J.); *Ferreira v. McShane*, No. 25-cv-7335 (E.D. Pa. Jan. 9, 2026) (Pappert, J.); *Vargas v. O'Neill*, No. 25-7094, 2026 WL 105711, at *4 (E.D. Pa. Jan. 14, 2026) (Costello, J.); *Muzofirov v. Jamison*, No. CV 25-7371, 2026 WL 126153, at *1 (E.D. Pa. Jan. 16, 2026) (Scott, J.); *Restrepo v. Jamison*, No. 25-CV-6518, 2026 WL 141803, at *11 (E.D. Pa. Jan. 20, 2026) (Leeson, J.). Despite the thousands of cases "piled sky high against the Government's position," it continues to detain noncitizens under § 1225(b)(2) who are then quickly granted relief by district courts. *Rios Porras*, 2025 WL 3708900, at *2.

This Court has identified two circuit decisions on this issue: one that is persuasive and one that is not. The Seventh Circuit found the Government was "not likely to succeed on the merits of [its] argument that those individuals, whom ICE arrested without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025). The court held the Government's interpretation of § 1225(b)(2) is likely wrong because the plain meaning of the term "seeking admission," within the statute, limits mandatory detention to those who are not already in the country and any interpretation to the contrary would render this term superfluous and contravene Congress's choice of language. *Id.* at 1060-62. It also found "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Id.* at 1062. The court additionally noted the Government's "recent reliance on § 1225(b)(2)(A) to detain noncitizens discovered within the United States upends decades of practice." *Id.* at 1062 n.13. This holding aligns with the analysis used in *Ndiaye* and in thousands of other cases. *See* 2025 WL 3229307, at *5-6; *see, e.g.*, *Demirel*, 2025 WL 3218243, at *4-5. *Castañon-Nava* is persuasive.

Meanwhile, a divided Fifth Circuit panel recently found the Government's interpretation of § 1225(b)(2) is correct. *Buenrostro-Mendez v. Bondi*, --F.4th--, No. 25-20496, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026). The majority read the term "applicant for admission" as identical to the phrase "seeking admission" in § 1225(b)(2). *Id.* at *4. This opinion is not binding

13

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

or persuasive.  The Court will instead align itself with the reasoning used in thousands of cases around the country, the Seventh Circuit's analysis, and Judge Douglas' compelling dissent in *Buenrostro-Mendez*.  *Ndiaye*, 2025 WL 3229307, at *4-8; *Castañon-Nava*, 161 F.4th at 1062; *Buenrostro-Mendez*, 2026 WL 323330, at *10-18 (Douglas, J., dissenting) ("[T]he majority and the government distort the statutory text, abstract it from its context and history, ignore the Supreme Court's clearly stated understanding of the statutory scheme, and wave away the agency's previous failure to detain millions of noncitizens as if it were a rounding error. . . .  [It] produces textualism without the text.").  Otherwise, under "the [G]overnment's proposed reading of the statute . . . the border is now everywhere." *Buenrostro-Mendez*, 2026 WL 323330, at *18 (Douglas, J., dissenting).  On the merits of this case, Ndiaye is entitled to habeas relief.